IN RE JULES CHOPAK (No. 3451) [1]

United States Court of Customs and Patent Appeals, May 23, 1932

*Per Curiam:* Jules Chopak, a resident of the State of New York, was admitted to the bar of this court on April 22, 1913, and continued as such until June 1, 1925, at which time he was indefinitely suspended after proceedings more fully detailed hereinafter. The present proceeding results from a petition for reinstatement filed by him on May 28, 1931.

On the 16th day of May, 1925, William W. Hoppin, Assistant Attorney General of the United States in charge of customs, filed a petition herein, calling the attention of the court to the suspension of said Jules Chopak as a member of the bar practicing before the Board of General Appraisers and praying for a citation to issue against said Chopak requiring him to show cause why his name should not be stricken from the roll of attorneys of this court. Such citation was

[1] T. D. 45754.

duly issued and upon its return the respondent, appearing in person, as well as by counsel, admitted the allegations of the petition, consented that the record made in said suspension proceedings before the said Board of General Appraisers might be considered as a part of the record here, and made no further contention in the matter. Thereupon, this court entered the order of indefinite suspension hereinbefore referred to.

The facts upon which said suspension were based will more fully appear hereinafter.

On March 5, 1927, said Chopak petitioned for reinstatement. Upon the appointment of a committee to report to the court upon the same, the petitioner withdrew his petition upon May 31, 1927.

On May 3, 1928, he filed a second petition for reinstatement. Thereupon, the court appointed a committee, consisting of eminent and able members of the bar of this court, namely, Thomas M. Lane, Allan R. Brown, and Albert MacC. Barnes, Jr., to investigate the facts, to take such testimony as might be deemed advisable, and to report the same, with its findings of fact and recommendations to the court.

The committee held full and extensive hearings, at which the petitioner appeared in person as well as by counsel. The report of this committee was filed January 25, 1930, recommending that the prayer of the petition be denied. Accompanying the same was a very large record of testimony, together with a transcript of the proceedings upon which petitioner had originally been suspended by the Board of General Appraisers and by this court.

Without entering into an extensive discussion of the facts which led to the original suspension of the petitioner, it will be sufficient to briefly summarize some of the salient facts as they appear from the report of said committee.

The petitioner was attorney for certain importers having a claim for drawback, and as such attorney he prepared and filed at the New York customhouse, on May 5, 1924, drawback entry No. 8858, covering an exportation of so-called "Paco cloth," in which he specified three import entries, Nos. 840602, 849473, and 869705, as covering the imported merchandise used in the manufacture of the cloth exported. At the time he did so, he had full information in his possession, received from his clients, that the drawback entry should have enumerated five other import entries, Nos. 878952, 902275, 705841, 816310, and 709815.

The petitioner had procured a liquidator in the customhouse to make a correct drawback entry, and this entry, when so prepared, correctly specified the eight import entries. The petitioner, however, rejected this correct entry and substituted one covering only three import entries as is above stated. The record shows that this was done

without the knowledge of his clients and for the apparent purpose of expediting the allowance of the drawback claim, but that the plan was frustrated by the customs authorities and a proper drawback entry made. It is plain that there was a deliberate and willful attempt on the part of petitioner, for which his clients were in no way responsible, to avoid compliance with the law and regulations intended to protect the Government against overallowance of drawback, the substitution of domestic for imported merchandise, and the possibility of other fraudulent claims.

On February 26, 1927, the petitioner delivered in person, to the director of the special agency service of the Treasury Department in Washington, a document which purported to be an original information respecting a customs fraud at the port of New York, affecting merchandise having an alleged value of $442,000. The information was made under section 619 of the Tariff Act of 1922 and claimed the informer's compensation therein provided. It was filed against Ernst C. Lehmann, sole owner of C. Lehmann's Wwe & Sohn of Guben, Germany, and Arthur M. Cox and Emile A. Bornemann, partners of Cox & Schrieber of New York City. This information was predicated upon attempted fraudulent entry, at fraudulent export values, of goods imported by the persons against whom said information was filed.

It is made plainly to appear from the record that during the time these alleged fictitious export values were fixed, the petitioner was the attorney for said importers and served them as such attorney for five months and accepted full payment for his services. He had ceased to be their attorney about May 23, 1924, but did not disavow or complain of the acts of his said clients, or report them to the authorities, until February 26, 1927, when he filed the petition claiming the informer's fee as aforesaid. This information was voluntary and not given by request of the Government. The petitioner defends his act in this respect upon the theory that the communications were not privileged and that he had the right to divulge them.

The committee also reported the following incident: In December, 1924, a special agent of the Government seized 106 bales of raw goose feathers, imported by or for the European Feather Importing Co. of New York City. At that time I. Shipper, who was connected with the importing firm, consulted petitioner about the seizure. Shipper and his company had been clients of the petitioner prior to this incident. Petitioner then attempted to have Shipper retain him which he refused to do, and, thereupon, employed other counsel, Carl E. Whitney. Shipper had left part of his books and papers with Chopak, however, and thereafter Chopak communicated with Whitney, stating, in effect, that his clients had been committing frauds in these various shipments leading up to the seizure of the goods

and that he, Chopak, had exclusive information on this subject and would communicate it to Whitney, if desired, claiming, however, an attorney's lien upon the books and papers in favor of himself. At about the same time he communicated with one I. Goldberg, who was apparently connected with the shipments, informing Goldberg that he had exclusive information in the matter and seeking employment and compensation for such information and his advice in the matter. The above incidents occurred in part during, and in part before and after petitioner's suspension from practice before the Board of General Appraisers, now the United States Customs Court.

Other matters are shown by the record and referred to in the report of the said committee. It is sufficient to observe that the conduct of the petitioner, as shown by the record, did not measure up to the high standards which ought to be observed by a member of the bar of this court. In many respects his conduct was in violation of the law of the land and showed an entire lack of appreciation of the ethical standards which should mark the conduct of an attorney at law. These acts, as shown by the record, were such as might well have justified the court in striking the name of the petitioner from the roll of the members of the bar of this court. However, the court thought it desirable to follow the suggestions of the committee, which had so carefully and painstakingly performed its duty in the matter, and entered an order denying the motion for reinstatement.

On March 3, 1930, the application of the petitioner for reinstatement was denied. On September 16, 1930, the petitioner again moved for reinstatement. No showing being made therewith, on October 7 said motion was denied.

On May 28, 1931, Chopak again filed a petition for reinstatement, which, after various continuances, was set for hearing and was heard on April 15, 1932. At such hearing, the petitioner appeared in person, as did Mr. Addison S. Pratt, chairman of the committee on ethics and grievances of the Association of the Customs Bar, Mr. Edward P. Sharretts, president of said association, and Mr. Charles D. Lawrence, Assistant Attorney General of the United States in charge of customs. At that time there was submitted to the court by Mr. Pratt, for said committee, a copy of a circular letter written by the petitioner and sent to customs brokers generally, on or about July 3, 1930. At the same time there was submitted to the court by the Association of the Customs Bar a very extensive and well-considered report on the relations of customs attorneys and customhouse brokers, prepared by a committee of said bar consisting of Thomas M. Lane, Frederick W. Brooks, Jr., and George J. Puckhafer. The court has found this report of great value in the consideration of the matter herein involved and feels itself under obligations to the committee for the same.

The letter in question, omitting the name of the addressee, is as follows:

GENTLEMEN: I had the pleasure of sending you writing slates for temporary memoranda which have proved to be very popular. Having some left, while the supply lasts, I would be willing to distribute the remainder to brokers requesting same.

Some brokers wait till I win a case and then wish to share my fee. It would be better business all around if they would recommend one client or more to me and then be in line for commission upon all my clients in their office.

I hope you will recommend business to me.

Yours very truly, JULES CHOPAK.

The petitioner admits freely that he circulated this letter but states that he desisted from such methods of obtaining business after the same was condemned by a rule of the United States Customs Court, his only defense being that other members of the customs bar were pursuing similar practices. Section 274 of the penal law of the State of New York at that time contained the following provision:

SEC. 274. *Buying demands on which to bring an action.*—An attorney or counselor shall not: * * *

2. By himself, or by or in the name of another person, either before or after action brought, promise or give, or procure to be promised or given, a valuable consideration to any person, as an inducement to placing, or in consideration of having placed, in his hands, or in the hands of another person, a demand of any kind, for the purpose of bringing an action thereon, or of representing the claimant in the pursuit of any civil remedy for the recovery thereof. But this subdivision does not apply to an agreement between attorneys and counselors, or either, to divide between themselves the compensation to be received.

The act of the petitioner, therefore, in sending out this letter, was in violation of the law of his state.

In addition such practices have, from time immemorial, been held to be contrary to the ethics of the legal profession. These ethical standards are well set forth in section 28 of the canons of professional ethics of the American Bar Association, and section 28 of the canons of ethics of the New York State Bar Association, of all of which the petitioner must have been cognizant at the time he sent out the letter in question.

It is perhaps a truism to say that the profession of an attorney at law is a highly honorable one. Because of the peculiar and confidential relation existing between an attorney and client, communications between them have almost universally been held to be privileged. However, where it is desired to do so, the very confidential relations which exist between attorney and client may be used by unscrupulous practitioners to perpetrate great wrongs, not only upon individuals but upon society as well. It is, therefore, necessary that high standards obtain among members of the bar, and that practices which tend toward fraud and injustice be held to be in violation of the ethics of the profession.

It was incumbent upon this petitioner who seeks reinstatement as a member of the bar of this court, to show that he has ceased the practices which have subjected him to the criticism and discipline of this court and has learned the necessity of conducting his practices along ethical lines. Instead of convincing the court that this is the case, the showing made by the committee on ethics and grievances here but accentuates the petitioner's apparent inability to comprehend that the profession which he seeks to practice is one which requires the highest standards. If the court has erred in any respect heretofore, it has been in exercising too great leniency in these proceedings.

The relationship between attorney and client in the practice of any branch of the law should always be a personal one, without intermediaries, in which the client employs his counsel and with whom he consults. Such a relationship brings with it that sense of responsibility and confidential relationship which should always exist between attorney and client. The legal rights of a litigant should not be made a matter of barter and sale.

The petition for reinstatement is *denied*, and a rule will issue against the petitioner, returnable on the third day of October next, at 10 o'clock in the forenoon, then and there to show cause, if any there be, why his name should not be stricken from the roll of attorneys of this court because of the matters and things herein set forth.